| 2 | 209 |
| 30 | 483 |

## WALLACE WEST *v*. THE STATE.

1. NEWLY-DISCOVERED EVIDENCE, in order to warrant a new trial, must have been discovered since the former trial, and be such as reasonable diligence

could not have secured at the former trial; be material in its object, and not merely cumulative or collateral; not simply to impeach a witness, and likely, on another trial, to produce a different result; and, in support of the motion, the affidavit of the witness should, as a general rule, be filed, and, when the case presents an exception to this rule, the absence of the affidavit must be accounted for.

2. Charge of the Court.—A paper copied into the transcript of a felony case, and purporting to be a charge of the court, but not signed by the judge of the court below, cannot be recognized by this court as such charge.

3. Same.—The omission of the court below, on the trial of a felony, to give a written charge to the jury, is a material error to the prejudice of the rights of the accused.

4. Practice of this Court.—In considering whether the verdict in a felony case is supported by the evidence, it is necessary to examine the charge of the court, whether it was excepted to or not.

Appeal from the District Court of Dallas. Tried below before the Hon. N. M. Burford.

The indictment was filed in February, 1873, and charged the appellant with the murder of Robert Montgomery, October 1, 1872. The cause came to trial at the January term, 1876, of the district court. There was no controversy as to the means by which the deceased came to his death, nor that the appellant was the person who fired the fatal shot. The verdict was murder in the second degree, and five years in the penitentiary the punishment awarded.

Many witnesses testified at the trial, but only one of them knew anything of the facts immediately attending the rencounter between the parties, which occurred at a country store conducted by the deceased, who was about thirty-eight years old. The accused was a youth of about eighteen, and lived with his mother in the neighborhood.

John Lyons, the witness who saw part of what transpired, gave in substance the following evidence: He and the deceased were sitting in front of the store, in the forenoon, when, about eleven o'clock, the accused rode up, hitched his horse, and took a seat with them. For some time a friendly conversation was carried on, until either the accused

or the deceased said, "Let me see you a minute," and they immediately walked round and behind the house, out of sight of witness, who went into the house and sat down. In a very short time witness heard them talking loudly and harshly, and witness inferred there was a dispute between them. Witness first recognized the voice of the deceased in the loud and harsh talk, and discovered that he was angry; the accused did not talk loud, and witness could not tell what he said, or whether he also was angry. Witness, hearing them moving round towards the front of the store, stepped out of the front door, and saw the accused coming into view round, the corner and stepping backwards, and saw him at the same time throw his hand to his right side and draw his pistol from his belt, where he carried it in plain view, and immediately shoot. He then got on his horse and rode off. The deceased cursed him just before he shot; called him a G——d d——d cowardly, rascally son of a bitch, or something like that, and told him that he, the deceased, was not armed, saying, "You wouldn't shoot an unarmed man, would you?" Witness found the deceased lying some six or eight feet from the corner of the store, and close to it. He had no arms during the difficulty, except a pocket-knife with which he had been whittling. When the accused got on his horse he said he never allowed any one to curse or abuse his mother; and the deceased said, "You have killed me, but I never insulted your mother."

Other witnesses testified to finding the pocket-knife of the deceased, open or partly open, on the ground close to where he fell, and there was evidence of some rude remarks made by the deceased to the mother of the accused a few days previous to the difficulty. The deceased was hit in the side, and died on the second day after receiving the wound.

There was much other testimony at the trial, but, as it related to facts anterior or subsequent to the encounter, and

has no relevancy to the questions considered in the opinion,. there is no occasion to detail it.

After the verdict the accused moved for a new trial,. assigning, among other causes, the discovery of new evi-- dence since the trial, being that of W. T. Drennan, a resi- dent of a neighboring county, who had witnessed what transpired between the parties just before the moment of the shooting, and whose knowledge of the facts was wholly unknown to the accused at the time of the trial.    Drennan's affidavit, filed as part of the motion, showed that on the day of the killing he was driving along the road which led in front of the store, and saw the deceased and the accused confronting each other by the side of the store-house, and talking in an angry manner; that the deceased was advanc- ing on the accused, who was retreating backwards; that. they were not more than four or five feet apart, the deceased doing most of the loud talking, and close enough to the accused to cut him with a knife; that, while the difficulty was thus going on, witness' attention was called off by his. load of cotton slipping, and just then he heard the pistol. Witness was about a hundred yards from the parties.    He was not related to either of the parties, and had never informed any one, previous to the trial, that he knew any- thing about the matter; could not say whether the accused saw him on the occasion.

The new trial was refused by the court below.    The opin- ion of this court discloses such other facts as are material.

*J. M. Stemmons*, *J. M Thurmond*, and *J. M. Hurt*, for the appellant.

*George McCormick*, Assistant Attorney General, for the State.

WINKLER, J.    Article 672 of the Code of Criminal Pro-

cedure lays down the several grounds upon which new trials in cases of felony shall be granted, and among them is the following:     " 6. When new testimony, material to the defendant, has been discovered since the trial." It is also provided that a motion for a new trial, based on the ground of newly-discovered evidence, shall be governed by the same rules as those which regulate civil suits. Pasc. Dig., Art. 3137.

A standard author, treating of the subject, says: " After-discovered evidence, in order to afford a proper ground for the granting of a new trial, must possess the following qualifications: It must have been discovered since the former trial; it must be such as reasonable diligence on the part of the defendant could not have secured at the former trial; it must be material in its object, and not merely cumulative and corroborative, or collateral; it must be such as ought to produce, on another trial, an opposite result on the merits; it must go to the merits, and not rest merely on a technical defense." Whart. Cr. Law, sec. 3161.

Another standard author lays down the same rules substantially, as follows: " It is incumbent on a party who seeks a new trial on the ground of newly-discovered evidence to satisfy the court, 1st, that the evidence has come to his knowledge since the trial; 2d, that it was not owing to a want of due diligence that it did not come sooner; 3d, that it would probably produce a different verdict if a new trial was granted; and, 4th, that it is material to the issue, going to the merits, and not impeaching a former witness." 1 Archb. Cr. Pr. & Pl., Waterman's 6th ed., 178–26.

Decisions of the courts of Texas we believe to be in harmony with these rules.

That the affidavit of the witness by whom it is expected to establish the newly-discovered evidence should be produced in support of the motion is a well-established general rule, though not without exception. The absence of such

affidavit may, under certain circumstances, be accounted. for. *Spillers* v. *Curry*, 10 Texas, 143.

It is believed that the affidavit of the accused and that of the witness by whom it is proposed to establish the newly-discovered evidence bring the case substantially within the rules above laid down. We do not wish to be understood. as holding, in so many words, that the proposed new testimony would necessarily of itself produce a different result; yet, when it is seen, as shown by the statement of facts, that no witnesses who testified on the trial saw both the parties at the time the fatal rencounter took place, and when it is. shown by the affidavits accompanying the motion for a new trial that the proposed new witness was in view of both parties during the quarrel, and almost up to the very moment the fatal shot was fired, the testimony must have a material bearing in determining whether the killing was self-defense or not. We think, under all the circumstances surrounding the case, as shown by the record, a new trial should have been granted. The non-production of the witness on the trial was not owing to want of diligence in preparing the case for trial.

Another ground for new trial, in the Article in the Code above referred to, is when the court has misdirected the jury as to the law, or has committed any other material error calculated to injure the rights of the defendant. It is set out in the motion for a new trial that the court erred in its charge to the jury, and that the verdict is contrary to law. The material. error committed, and which must necessarily have been, calculated to injure the rights of the defendant, is that the judge, so far as we can determine, did not charge the jury in writing, as required by the Code of Criminal Procedure..

It is the duty of the judge, in a criminal case of the grade of felony, to deliver to the jury a written charge, in which. he shall distinctly set forth the law applicable to the case.. Pasc. Dig., Art. 3059

" The general charge given by the court, as well as those given or refused at the request of either party, shall be certified by the judge, and, in case of appeal, constitute a part of the record of the cause." Code Cr. Proc., Art. 597 (Pasc. Dig., Art. 3062)..

There is no such charge in the record before us. There is, it is true, a paper copied into the record purporting to be charges to the jury; but this paper cannot be considered for any purpose, because it is wanting in the authenticity required by law, in that it is not signed or in any manner certified by the judge. *Smith* v. *The State*, 1 Texas Ct. of App. 408.

In examining whether the evidence supported the verdict it is necessary to examine the charge, whether excepted to or not. *Higginbotham* v. *The State*, 23 Texas, 575.

This ground for new trial we cannot consider; for the reasons above stated, there is no proper charge in the record.

For these errors the judgment must be reversed and the cause remanded.

*Reversed and remanded.*